JOHN HOFFMANN & SONS COMPANY, Respondent, vs.
PARKS, Appellant.

*October 18—November 15, 1921.*

*Limitation of actions: Agreement between parties as to payment
on note: Consideration: Effect on limitation: Appeal: Special
verdict: Alternative form: Waiver of defect.*

1. In an action by an indorsee of a promissory note against the
   maker, wherein it appeared that the maker had made no
   direct payment on the indebtedness within the statutory
   period of limitations, the evidence is *held* to support a finding
   by the jury that the defendant maker had agreed with the
   plaintiff indorsee that certain rents due to the indorser be
   applied on the note.
2. The liability of the maker and indorser upon the note and the
   mutual agreement of the parties would be ample consideration
   for the payments.
3. Although the court required the jury to find whether an agree-
   ment was made "that the rent checks or some of them" be
   applied as payments on the note, and a question so framed in
   the alternative is not ordinarily approved, it is *held* that,
   since there was no evidence which would indicate that some
   of the checks were to be so applied and others not, the jury
   were not misled and no injustice was done.
4. Where a special verdict is objectionable in form, counsel must
   object and enter due exception to the refusal of the court to
   correct it.

APPEAL from a judgment of the circuit court for Price
county: G. N. RISJORD, Circuit Judge. *Affirmed.*

This is an action by the plaintiff as indorsee against the
defendant as maker of a promissory note for $1,500 dated
February 14, 1907, payable on demand to F. L. Hunt, and
given as part of the purchase money for a stock of goods.

The note matured on August 23, 1911, when the plaintiff
demanded payment. The action was commenced July 28,
1919. Defendant denied liability by reason of the statute
of limitations, sec. 4222, Stats. Plaintiff contended that the
statute was tolled by payments within the six years next
preceding the bringing of the action.

The note was indorsed to the plaintiff company in payment of Hunt's indebtedness to it.   Until August 14, 1911, defendant paid' the interest to plaintiff.   On August 23, 1911, after demand, defendant paid $200 on the principal. These were the only payments which he made directly to the plaintiff.

In March, 1912, Mr. Riemer, credit man of the company, by agreement was appointed trustee of the grocery business of defendant and his partner; and thereafter until July, 1918, defendant acted as manager under the direction of the trustee.   The business was carried on in a building owned by Hunt, who had a store in the same building, a door connecting the two places of business.

On April 9, 1912, plaintiff sent to Hunt the following letter:

"F. L. Hunt, Phillips, Wis.      Milwaukee, April 9, 1912.

"Dear Sir: With reference to the rent due you on the Parks & Waterhouse store: we notice that this will be due and payable on the 12th inst. and will amount to $30.   We wish to inquire if it will be agreeable to you to have this rent credited on your indebtedness with us.   We make this proposition believing it will be the easiest way for you to pay it off.   Will you kindly advise us by return mail, and greatly oblige,                              Yours very truly,

"John Hoffmann & Sons Co."

Hunt returned the letter with the following indorsement: "Yes, I intended writing you to do so.   Truly yours, F. L. Hunt."

Thereafter on November 30, 1912, in the presence of *Parks,* Hunt indorsed and delivered to plaintiff checks aggregating $135, and this amount was indorsed on the note to the credit of *Parks.*   The checks were written by *Parks,* payable to Hunt, and signed by Riemer as trustee.   They represented payments for the rental of the store.

Further indorsements of rent checks were made as follows: May 21, 1913, $180; December 30, 1913, $210; December 17, 1914, $70; September 30, 1918, $70.   The delivery of all of these checks to Riemer as agent of the plaint-

iff took place in the store of Hunt, generally if not always in the presence of *Parks.*

Riemer testified that all of these payments were made in pursuance of an agreement between *Parks,* Hunt, and himself whereby the rent money due Hunt from *Parks* should be paid by *Parks* to plaintiff and applied on the note, and that *Parks* was to reimburse Hunt to the amount of these payments.

Hunt testified that he did not remember that *Parks* had any part in the agreement as to the application of rents and that there was no express agreement that *Parks* should reimburse him; that he (Hunt) knew that the rent checks were being applied on the note and that he considered that *Parks* was under a moral obligation to reimburse him, and that he hoped to get the money back; that he made the payments because he knew he was liable as an indorser.

*Parks* denied the agreement, but testified he considered himself under moral obligation to reimburse Hunt. He further testified that he had considered that this note should be taken care of by the trustee and that he was free from liability on it.

The court submitted the following question to the jury: "Did the defendant, *Parks,* agree with Mr. Riemer that the rent checks, or some of them, might be applied by the plaintiff as payments on the note in question?" The answer was "Yes."

Both parties moved for judgment. Judgment was rendered for the plaintiff in the sum of $1,450.54.

For the appellant the cause was submitted on the brief of *W. K. Parkinson* of Phillips.

For the respondent there was a brief by *Barry & Barry* of Phillips, and oral argument by *John S. Barry.*

JONES, J. The principal exception of the defendant's counsel is that the court erred in submitting the special verdict in the alternative.

Passing that subject for the present and assuming that

the error was not fatal, the finding of the jury is based on such evidence that we cannot properly set it aside. Both the defendant and Hunt, the indorser of the note, were undoubtedly liable to the plaintiff. It does not seem inherently unreasonable that there should have been an agreement to apply the payments made by the defendant on this indebtedness. It was conceded by Hunt that this would be the easiest way to pay the indebtedness. If some such arrangement had not been made it would have been natural for the plaintiff to insist upon payment of the note in a manner which might have been more burdensome to both *Parks* and Hunt. The testimony makes it clear that Hunt expected the rent checks to be applied as they were, and throughout the whole period the plaintiff made the application relying on the supposed agreement.

To this agreement Riemer testified very positively. Although Hunt testified that he did not remember that *Parks* was present when it was made, he did not directly deny the agreement, and his whole course of conduct seems to us to corroborate the testimony of Riemer.

There is no rule of law which would prevent the three parties interested from making such an agreement. The liability of the defendant and Hunt upon the note and the mutual agreement of all the parties interested would be ample consideration. *Mainzinger v. Mohr,* 41 Mich. 685, 3 N. W. 183; *Nat. Bank of Delavan v. Cotton,* 53 Wis. 31, 9 N. W. 926.

It is earnestly argued by defendant's counsel that the verdict was fatally defective for uncertainty. It is undoubtedly true that ordinarily a verdict in the alternative is not to be approved, and such verdicts have often been disregarded. Thus where a jury was asked to find whether there was a contract express or implied that defendant should receive compensation for certain services, and an affirmative answer was given, the court said:

"This answer not only leaves it uncertain whether the jury found there was an express or implied contract between the

parties, but we are unable to ascertain whether the jury *agreed* that either contract was made. A part of them may have found there was an express contract, but no implied one; and the others may have reached the conclusion that there was an implied, but no express contract. Thus it is rendered uncertain whether the jury in fact determined this issue. . . . Under these circumstances the question is faulty for duplicity, and is fatally defective for uncertainty as to the determination of the issue." *Lowe v. Ring,* 123 Wis. 370, 375, 101 N. W. 698.

There have been numerous other decisions holding the same general rule.

Does this rule apply in the present case? Although there was considerable testimony as to facts more or less collateral, the whole effort on the part of the plaintiff and defendant during the trial was directed to the question whether or not an agreement was made between the parties regarding the application of the rent checks to the note in question. Riemer testified to a positive agreement at a given time and place that the rent checks should be thus applied. *Parks* denied the agreement. There was no contention by either party that any other agreement was made. On the motion for a new trial the court said:

". . . It was not contended upon the trial that if the plaintiff had a right to apply some checks upon *Parks'* note it had not the right to apply all of them that were released by Hunt."

We consider that the trial court rightly came to the conclusion that if *Parks* agreed that the rent money might be applied as testified to by Riemer, the agreement included all the rent checks that were in fact so applied.

In view of the issues which were tried and the whole course of the trial, we consider that the form of the verdict did not mislead the jury and that there was no testimony from which they could have inferred that some of the payments applied upon the note were included in the agreement and that others were not, and we have come to the conclusion that no injustice was done by the submission of the verdict

in the form it was left to the jury. *Berger v. Abel & Bach Co.* 141 Wis. 321, 124 N. W. 410; *Korn v. Pfister & Vogel L. Co.* 147 Wis. 526, 133 N. W. 586. See *Tosty v. Morgan Co.* 151 Wis. 601, at p. 604 (139 N. W. 402).

Moreover, it does not appear that any exception was taken to the form of the verdict or that the attention of the court was called to it until after the trial or that any other form of question was proposed by defendant's counsel. If the verdict was objectionable in form, counsel should have objected and entered due exception to the refusal of the court to correct it. *Dolphin v. Peacock M. Co.* 155 Wis. 439, 144 N. W. 1112; *Moering v. Falk Co.* 155 Wis. 192, 144 N. W. 207; *Landauer v. Kasik,* 155 Wis. 376, 144 N. W. 974; *Ludvigson v. Superior S. B. Co.* 147 Wis. 34, 132 N. W. 621.

*By the Court.*—Judgment affirmed.