STANISLAWSKI, Administrator, Appellant, vs. METROPOLITAN LIFE INSURANCE COMPANY, Respondent.

*May 11—June 6, 1939.*

For the appellant there was a brief by *Jacob Rothstein,* and oral argument by *Nathaniel Rothstein,* both of Milwaukee.

For the respondent there was a brief by *Rowland W. Stebbins,* attorney, and *Bloodgood, Kemper & Passmore* of counsel, all of Milwaukee, and oral argument by *Eric W. Passmore.*

FOWLER, J. The action was brought in the civil court of Milwaukee county to recover on a life insurance policy. Trial was before court and jury. A nonsuit was granted.

On appeal to the circuit court the judgment of nonsuit was affirmed. The civil court judge granted the motion for a nonsuit on the ground that he considered that under the rule of *Clark v. Prudential Ins. Co.* 219 Wis. 422, 263 N. W. 364, the sound health of the insured at the date of the policy was a condition precedent to liability on the policy, and that the evidence failed to show that the insured was then in sound health. We infer that the circuit judge was of the same opinion, although he did not state the ground of his affirmance.

The insured died September 22, 1935. The application for the policy was signed November 15, 1934. The policy was issued December 1, 1934. It is an "industrial" policy for $500 and was issued without physical examination. It provides that:

"If, (1) the insured is not alive or is not in sound health on the date hereof; or if (2) before the date hereof, the insured has been rejected for insurance by this or by any other company, order, or association, or has, within two years before the date hereof, been attended by a physician for any serious disease or complaint, or, before said date, has had any . . . disease of the heart . . . then, in any such case, the company may declare this policy void and the liability of the company in the case of any such declaration or in the case of any claim under this policy, shall be limited to the return of premiums paid on the policy, except in the case of fraud, in which case all premiums will be forfeited to the company."

The insured was seventeen years old at the time the policy was issued. She was living and always had lived at home with her parents and was unemployed from the date of her application until her death. The cause of her death so far as appears was "she caught cold, got sick and died."

The defendant contends that the nonsuit was properly granted because the evidence does not show that the insured, (a) was in sound health at the date of the policy; (b) had never been rejected by any insurance company; (c) had never

had diseases of the heart; and (d) had not been under the care of a physician within three years from the date of the application.

If the evidence before the court when the motion for a nonsuit was made was such as to warrant the jury in inferring that the facts accorded with provisions of the policy above referred to as (a), (b), (c), and (d), the nonsuit was improperly granted. We will consider, *seriatim*, whether the evidence before the jury would warrant the jury in inferring that the facts so accorded.

(a) Both the father and mother of the insured testified that at the date of the policy the insured appeared to be in good health and had no sickness or ailment at that time. They were in a position to know as to these matters. The mother admitted that the insured had a cold during the fall but the application was signed November 15th, and a cold sometime in the fall is entirely consistent with sound health on that date and on December 1st, the date of the policy. There was no testimony whatever to indicate the contrary.

The defendant assumes that testimony of a physician is necessary to establish sound health, but cites no authority to that effect. Counsel for the defendant say that it appears from the mother's testimony that four physicians saw the daughter; that these physicians might have been called by the plaintiff; and cite *Booth v. Frankenstein,* 209 Wis. 362, 245 N. W. 191, to the point that failure of a party to call a witness who knows as to a fact permits the inference that his testimony would have been unfavorable to the party's cause. But it does not appear that any of these physicians saw the insured at or about the time of the issuance of the policy, or ever saw her before that time. And if it be true that failure of a party to call physicians permits of inference that they would have testified unfavorably it does not bar the jury from believing the testimony of others who have given favorable testimony. To the point that lay witnesses may

testify to a person's appearance of health see *Smalley v. Appleton,* 70 Wis. 340, 344, 35 N. W. 729, citing Lawson (2d ed.), Exp. Evidence, pp. 525, 527; Jones, Evidence (2d ed.), p. 2306; Goldstein, Trial Technique, § 472; 1 Wigmore (2d ed.), Evidence, § 568. We are of opinion that the evidence of the father and mother of the insured was sufficient to take to the jury the question whether the insured was in sound health at the date of the policy.

(b) The claim here is that the evidence does not show that the insured had never been rejected by an insurance company. We discover no direct evidence that she had not been. The only evidence relating to the subject was elicited by defendant's counsel.

On cross-examination of the plaintiff, the father of the insured, an application stated by counsel for defendant to be one of the insured for a policy with the defendant company, marked Exhibit 2, was shown to him. This carried the notation "rejected—heart—rheumatism." Defendant also presented to the plaintiff what counsel stated was the application for the instant policy, marked Exhibit 1, which counsel say contained a question whether the applicant had ever been rejected for insurance by the defendant or any other company that was answered "No." The father stated that he could not tell whether the signature on Exhibit 2 was that of the insured, but admitted that that on Exhibit 1 was hers. The mother testified that the signature on Exhibit 2 was not that of the insured, but that the signature on Exhibit 1 was. Neither of these exhibits is in the record. Thus there is no evidence before us of their contents and there was none before the jury unless the signature on Exhibit 2 so showed by comparing it with that on Exhibit 1. Comparison of these signatures might support the inference that both were signed by the same person. But even so, the question would be for the jury, except in case the signatures were so similar and so individualized as to make it perfectly clear even to a layman

that they were made by the same person. We cannot assume that the two signatures were so different as to indicate to the jury that they were not made by the same person. Thus, there is no evidence that the insured had been rejected for insurance. On this phase of the case the decision here must turn on whether the provision of the policy here designated (b) was a condition precedent, imposing on the plaintiff the burden of affirmatively proving that the insured had never been rejected for insurance.

It would appear to be the defendant's fault that the applications above referred to are not in the record. There is no bill of exceptions in civil court cases. The case goes to the circuit court on a transcript of the evidence and record in the civil court. It comes here on the circuit court record which includes the transcript and record of the civil court. The applications were produced and offered in evidence by the defendant. They were in its possession and files and should have been left with the civil court, and certified up to the circuit court with the rest of the evidence.

(c) The question under this head is whether the evidence is sufficient to show that the insured had never had heart disease before the policy was issued or any other of the diseases specially mentioned in the provision of the policy here designated (c). The parents gave no direct testimony that she had not had heart disease or any of the other diseases specified in the provision of the policy first stated. The mother testified that up to the time of her last sickness "the condition of her [daughter's] health was all right." The father testified that the insured had never been to a doctor prior to December 1, 1934, and this, if true, would indicate that she had never had any of the diseases specified in the policy, all of which were serious. The defendant contends that the evidence shows that the insured had had heart disease because of the notation stated by counsel to be on Exhibit 2 referred to, "rejected—heart—rheumatism." From

what is said under (b) above, it appears, that we cannot say, Exhibit 2 not being before us, and not having been proved to have been signed by the instant insured, that there was evidence before the civil court to warrant the inference that the insured had had heart disease. Whether the testimony of the father and mother was sufficient to warrant the jury in finding that the insured had never had any of the serious diseases mentioned in the provision of the policy under consideration is perhaps close, but under our view of the provisions of the policy denominated as "conditions" this becomes immaterial.

(d) The proposition here involved is whether the evidence shows that the insured had not been attended by any physician for any serious disease or complaint for three years prior to the signing of the application. The father with whom she had always lived and was in a position to know testified categorically that she had not been. The mother on cross-examination named four physicians who had attended her daughter, but her testimony as to this relates to attendance during the sickness resulting in her death, which did not begin, by the mother's testimony, until four months after issuance of the policy. There being no evidence to the contrary the testimony of the father would warrant the inference by a jury that the insured had not been so attended.

The defendant urges that the nonsuit should be upheld because the plaintiff did not make the necessary proofs of loss. This contention was not presented in the lower courts. Failure to make proof of loss was not affirmatively asserted as a defense, but the complaint alleged the plaintiff furnished the defendant with "due notice and proof of the death" of the insured, and the defendant in its answer admitted that what purported to be "notice and proof" of death of the insured was furnished defendant "on or about September 24, 1935," but "denies that they constituted proof of loss under said

policy." The plaintiff testified that after the insured's death he "made a demand" on the defendant "to pay the amount of the policy." He "asked [the defendant] for the money on this policy after my daughter's death." The defendant made no objection to the insufficiency of this proof at the time of the trial. No evidence was offered or statement made as to what was necessary to constitute due proof. The point was thus not litigated below. In this situation we must decline to support the nonsuit on the ground of failure of proof in the respect here under consideration.

We consider that the evidence was sufficient to support a finding by the jury, if they so found, of the existence of three of the four facts, want of proof of which is urged by the defendant as voiding the policy in suit, regardless of whether their establishment is a condition precedent to recovery, or whether the burden is on the plaintiff to establish their existence as defendant claims, or on the defendant to establish their falsity as claimed by the plaintiff. As to the provision above designated (b), there being no proof of rejection of previous applications for insurance by the insured, the nonsuit was proper if the burden was on the plaintiff to prove absence of previous rejections.

As above stated, the trial court considered that all four matters were conditions precedent under the ruling of this court that proof of sound health was a condition precedent under the policy involved in *Clark v. Prudential Ins. Co., supra.* That policy contained the following:

"Preliminary provision: This policy shall not take effect if on the date hereof the insured be not in sound health, but in such event the premium or premiums paid hereon, if any, shall be returned."

The decision rested wholly on the language "shall not take effect if," etc. That language is not in the instant policy.

The provision as to sound health in the instant policy relied on as creating a condition precedent reads:

"If, (1) the insured is not . . . in sound health at the date hereof . . . the company may declare this policy void and the liability of the company . . . shall be limited to the return of the premiums paid on the policy, except in the case of fraud, in which case all premiums will be forfeited to the company."

and the language above quoted applies to the other facts stated as "conditions."

Under the language of the provision first quoted the Prudential policy never went into effect if the facts were not as stated in the provision, while the instant policy went into effect, if they were not as stated, subject to being declared void by the company. In this situation, as matter of common sense, if the defendant wishes to declare the policy void it must prove the facts upon which its declaration must rest and it has the burden of proof as to such facts, while if before a policy goes into effect a stated fact must exist, the plaintiff to prove the policy went into effect must prove that fact and the burden of proof as to that fact is on him. Reading the opinions of courts in insurance cases leaves one befuddled as to whether the instant provision is a condition precedent or an affirmative warranty, but whichever it may be called, the common-sense view is as above stated. As stated in 5 Joyce, Insurance, § 3790, referring to life insurance policies:

"If there are conditions precedent to the right of recovery the burden is upon the insured to prove a compliance therewith. . . . But if the insurer insists that a life policy was avoided by a breach of its conditions, the burden of proof to establish that proposition is always upon the insurer and never shifts."

The defendant is insisting that it had previously rejected an application of the insured. It therefore has the burden of so proving.

The defendant relies on three cases involving suits on policies of the defendant company which its counsel contends rule the provision here involved as a condition precedent. The policy involved in *Schroeder v. Metropolitan Life Ins. Co.* 103 Mont. 547, 63 Pac. (2d) 1016, was apparently identical with the instant policy. The court considered the provision here involved as a warranty, p. 1020, *supra*. The holding of the court is stated in the syllabus, par. 13, p. 1017, as follows:

"In action on life policy containing stipulation that, if insured was not in sound health on date of policy, insurer might declare policy void, evidence *held* to justify denial of recovery on ground that insured had serious heart affliction on date of delivery of policy."

That case is entirely consistent with the view here taken.

The identical provision was also involved in *Karp v. Metropolitan Life Ins. Co.* 86 N. H. 124, 164 Atl. 219. The court held, par. 3 of syllabus, p. 219:

"Life policy conditioned on insured's being in sound health on date thereof *held* not enforceable, where court found insured had valvular heart disease."

The opinion says nothing as to where the burden of proof lay, but the case went on the proposition that the defendant had established that the insured was not in sound health, not that the plaintiff had failed to prove sound health. Apparently courts may take their choice in calling the provision a "warranty" or a "condition" precedent but the end result is the same. If the insurance company proves that the insured was not in sound health it wins.

The other case cited is *Sheets v. Metropolitan Life Ins. Co.* (Ill. App.) 19 N. E. (2d) 233. This is a memorandum decision. It merely states that the defendant claimed the insured was not in sound health, and within two years prior to date of the policy had been attended by a physician for a serious disease, and that a judgment for the defendant was

582

affirmed. Apparently the defendant was merely held to have established its claim.

*By the Court.*—The judgment of the circuit court is reversed, with directions to the circuit court to vacate the judgment of the civil court and remand the record to the civil court with directions for further proceedings according to law.